I reserve, if I can, three minutes for the question.  The question is, when you went out to California or any of the other places for after the plan was put into place here, and they knew that you'd be conflicted out, if you will, recued, or you were dismissed because there was a conflict, what made you think that, was there something in the plan or something in the negotiations that made you think no one would do that, or what? Well, Your Honor, the whole, you've got to remember the context of the plan confirmation, the- That's what I'm asking. Yeah, right. So, originally, this bankruptcy was filed the day before a summary judgment argument in one of the three class actions. That happens a lot. Absolutely. And there was, in fact, an earlier good faith attack on the bankruptcy, at which point Mr. Aarons, who was then representing the CFI group, said, Your Honor, this is just, you know, Levine-Leichman is just taking over this company. Remember, that motion was heard the same time as the sale motion. So Mr. Aarons is arguing, all that's going on here is that the secure creditor is taking over a company, and really what it's trying to do is insulate itself from all of these legal problems that caused the bankruptcy in the first place. Is there something wrong with that as a matter of law? Is it not in their interest, and are they not well advised to take steps within the law that would insulate them from liability to the extent they could? Well, actually, Your Honor, I think that that goes into the good faith test, which this court has written a lot about. I mean, if, in fact, all that's happening in a bankruptcy is the managing or the deflecting of liability, that, in fact, isn't a basis for filing a bankruptcy. There must be a good faith effort to maximize value. Well, wait a minute. I understand that. I understand those cases. Right. But what I don't understand is how somebody's saying that you have a conflict and cannot be counsel is evidence of bad faith with regard to the bankruptcy that was filed in this district. Well, our argument wasn't that just simply they're filing a motion to disqualify us, arguing that the bankruptcy was effectively a poison pill. That wasn't our argument. Our argument was, looking at the bankruptcy in totality, remember, Your Honor, before they even filed that motion to disqualify us in California, they had already contacted one of our clients, called that client, induced that client to file a class action lawsuit on behalf of the entire creditor group from California. They didn't serve us with that until the briefing was over in California. And then later, after we were disqualified, they went to the fiduciary, who was supposed to be looking out for our interests. We were the main creditor group, and persuaded the fiduciary to file a copycat suit against us that we had somehow misrepresented. We had committed bankruptcy misconduct. And remember, Your Honor, none of this, what I'm telling you today, none of this was... You came back, the plan was put into play in what, 2009? Yes, November 2009. And then when did you go out back to California? Okay, so here's the timeline. The plan became effective the last week of December of 2009. Under the Planned Support Agreement, we basically... The Planned Support Agreement expired at the end of December. Approximately ten days later, we filed the suit that we won the right to file in California. And then somebody moves to recuse or disqualify you. Well, but there's other things that happened before that, Your Honor. So that's January. They began, apparently, this is what the evidence showed, and I'm not questioning, Your Honor, none of this came out of the appeal below because we weren't permitted to argue any of this. Yes, understood. Okay. So the first thing that happens is they try to find someone in the CFI group to sue us. They filed a class action malpractice case in California in April. We don't know about that. They don't serve us until August after the briefing on the disqualification motion has already happened. And by the way, we had already won dispositive motions. The case was teed up. And then after we were disqualified and withdrew from the case, as we were ordered to do, they filed yet another version. They basically recruit Mr. Singley, the fiduciary in the bankruptcy, to file another case the day before they're paid Mr. Singley's services. Is your position, Mr. Applesbury, is your position that we shouldn't be listening to Mr. Singley? That he's got unclean hands, so don't listen to what he says? No, my position, Your Honor, is that this equitable mootness decision, now this Court is certainly familiar with equitable mootness decisions, I'm just going to try to find the background before we can get to that, as to exactly what happened. So you come back here and you file and ask for numerous forms of relief. Yes, Your Honor. And your grounds for doing that are bad faith, but bad faith in what sense as it relates to the plan or the actions? Maybe it's related to the actions of Singley, I'm not sure. What were your grounds for saying that was bad faith and it should cause the Court to entertain at least some of the remedies that you seek? The core compromise between us, the main credit group, and Lee Lightman, the new company, whose plan was, remember the debt is already long gone, the core ingredient of that compromise was that we had the right to continue to challenge the legality of the business model post-confirmation. That was the core compromise. The Judge Shannon himself said, I remember that, that's true. And I would assume that they could still continue to do that in California and the other two states, I don't realize Pennsylvania was separate. They could continue to do that without the counsel. Could they not? Absolutely. It could be done that you could jettison the counsel, the legal team that had been representing this group of consumers for eight years that had been assembling proof, that had done discovery, that had established class certification in two forms. Yes, of course, it's certainly possible. In fact, that's what happened here, that we were told that in California to withdraw and we did so. So that raises the question, since they were not deprived of the central point that you've said was the compromise, they were able to pursue those claims, where's the bad faith? It's very, very clear that there's a lot of bad feeling among the lawyers here. But how is that relevant for the question of whether the parties were able to get the benefit of what they bargained for in the compromise and then in the position taken with the plan? What we were asking the bankruptcy court to do is to look at this bankruptcy in totality based on the implementation activities that had occurred and based on this very small agreement that essentially was the court agreement that Mr. Aarons, the plan recognized to be their representative, would in fact be able to file the case. So wait, wait, wait, I don't want to misunderstand. Are you retreating from what you just acknowledged a moment ago, which is they might have lost their lawyers, but they didn't lose their right to pursue whatever they wanted to pursue? I thought I heard you say that. I did say that, Your Honor. I did say that, but what we were asking the bankruptcy court to do is to look at this bankruptcy in totality. What happened here? Did anything happen in this case other than going after the legal team that had been representing this creditor group for seven years before the bankruptcy? Was there anything else that occurred to trigger an event for us to file this motion? There were several things that happened. One was Mr. Singley filed a motion asking for more time, saying no one's going to get paid, and in fact NACG hasn't paid us a dime. But at the end of this, your bad faith claim, does it come down to not they're trying to pursue indirectly what they couldn't do directly, that is they're not trying to keep us from being able to pursue these other claims, they're trying to prevent us from doing it through the lawyers who are best situated to handle these claims, and that's bad faith. Is that the real? That's not the totality of the argument, Your Honor. Going back to what I said before, what this court has said repeatedly is that a bankruptcy, in order to be in good faith, has to be doing something other than to be gaining some litigation advantage by the proponent of a plan. It has to be doing something. It has to be either maximizing value or enabling a reorganization. None of that happened here. And so it's the point that good faith, this court has said good faith is not a permanent finding. Good faith is or isn't good faith at one point of a bankruptcy, might be looked at differently when more facts are known later on. In retrospect, this bankruptcy did nothing for anybody other than for Levine Lightman to essentially do what he set out to do initially, and what the court said it couldn't do if it had been proposed. Was this your only avenue? Pardon? Could you have filed some motion? Since the assertion is, hey, they're not doing anything to reorganize, could you have sought that kind of relief from the court instead of a dismissal, a finding of bad faith? We did, actually, Your Honor. We appeared during the bankruptcy post-petition. We opposed further delays. We opposed the concept that the interpretation of the APA that Levine Lightman could get credit for payments that the insurance company paid. We were doing a lot in the bankruptcy. But we also firmly believe that looking at everything that happened here, this, at the end, was a bad faith bankruptcy. We recognize that this is a very unusual argument to make. We understand that. And all that we're trying to do is to make that case. It's a steep hill to climb, even on the merits. Absolutely, Your Honor. We're well aware of that. And it's a steep climb, but the facts here were outrageous. They were really, frankly, unbelievable. To go after the legal team that they did in the name of the plan, claiming that we had somehow committed some sort of bankruptcy misconduct. Judge Channon dispensed with that. No, you didn't. But the fact is that we've had to defend ourselves on two coasts from that claim. Were you counsel in the Pennsylvania action or was that another counsel? We were counsel and then decided, because we were concerned that our presence would be tainted, we withdrew. Just a general question. Why was it that only the Pennsylvania action got to go against the insurance for $2.5 million? There are actually two Pennsylvania actions. There's a pre-bankruptcy and a post-bankruptcy. We were not counsel in the pre-bankruptcy. The reason that the Pennsylvania class was handled differently was that there was insurance available for that class. And what the deal did for Pennsylvania was that they were given a judgment against the debtor and permitted to go against the insurance proceeds. And that in fact has happened. If that's happened, Mr. Ecclesburg, how can you say in your briefing, and you do say in your briefing if I'm not mistaken, that the Pennsylvania claims are not going to be harmed? If they've gotten something that looks like a distribution and you want to unwind this, aren't they by definition going to be hurt? Your Honor, that's one of the core errors below. We weren't seeking to unwind the plan. We've never sought that. That's a motion under Section 1144 of the Code for revocation of confirmation on account of fraud. We didn't seek that and we couldn't. It was after 180 days anyway. We were seeking dismissal and sanctions. What happens as a practical result? What happens to the third parties who've received money distributions under a plan if you go back and say the whole thing was a sham to begin with? Bad faith. Stop it now. Does that have no legal impact whatsoever on people who receive money under the plan? Or does that call into question the legality of the distributions made? Your Honor, that's precisely the question that Judge Shannon reserved. He didn't decide that question. I'm asking you. I'm asking you what your client's position is. It does not require unwinding of the plan. It might require the unwinding of some of the professional fees paid, but there's no requirement that the plan be unwound. That was the position, in fact, that my opponent took, that the plan would still survive. And the judge ultimately said we don't have to decide that. We don't have to decide what a post-confirmation dismissal looks like because I'm deciding that you haven't shown cause. But that's precisely why there's no equitable mootness issue. That's a good segue to Mr. McLaughlin. We have not asked you about equitable mootness. We're going to ask him. We'll get you back on rebuttal. Pardon? We'll get you back on rebuttal. Okay. We've given you about five minutes over. We'll give you more time. Okay. Thank you. Good afternoon, Your Honor. I'll try to keep this brief. I originally had planned a presentation based upon the equitable mootness question. Well, go ahead. But because we've sort of gotten into some of the merits, I don't know if you want me to address, to respond to those comments. The point is, I'm just trying to put myself in the head of you or whoever was representing the people opposing Mr. Applesburg back at the court. Why not just deal with us on the merits? Why put up the fence, if you will, or the attempted fence of equitable mootness? Court, you have jurisdiction. You can decide it. There's no problem with that. But you should, out of a matter of prudence, just refrain from deciding it, not get to the merits, knowing that, at least in this circuit, equitable mootness is something to be done rarely. It seems like, and you obviously heard some of the questions we've asked Mr. Applesburg, it seems like you may have had a very good case on the merits. We are, and obviously we're prepared to brief and argue the merits if this matter is remanded. Quite frankly, Your Honor, we believe that the arguments of Mr. Applesburg and his co-counsel, if we view them as counsel's arguments, not the CFI class per se, are just so meritless and we're so tired of litigating with them. If they're so meritless, why didn't you deal with the merits? I mean, it is a fundamental thing. Well, actually, we did. As the Court may recall, there were two appeals filed. There were two motions before Judge Shannon, both of which were ruled on. One was on a dismissal, which was denied, and one was on the settlement, the 9019, which was granted. Both were appealed. We went forward on the merits of the 9019, well, referred to as the 9019, and in fact, Judge Robinson did rule on that, I guess last week, affirming the approval. As a matter of trial strategy, we decided that the argument was so ridiculous. Well, she said, she herself said, that it wasn't going to result in great difficulty or inequity if this were considered on the merits and relief of the sort that they were talking about were given. So, if that's true, how can it be equitably made? Your Honor, we respectfully disagree with Judge Robinson that we think it would be actually chaotic if this thing got dismissed. As a matter of law, though, if that's her determination, I mean, we know what your position is, but we've got to look at what she did. She said there won't be great difficulty or inequity. By saying that, isn't that game up for equitable mootness? How can it be equitably moot if it won't be, quote, if there won't be, quote, inequity, unquote? Well, Your Honor, if I understand the test of equitable mootness correctly, based upon your recent role in the SEMP group, it's whether the result will be cataclysmic for the overall case. One, whether there's a substantial consummation than the second part is, would it be chaotic or will parties be injured? Precisely. And I don't, I recognize, well, certainly, there was a technical substantial consummation based upon the language of 111. I'm not even sure if that's the case under 111. I mean, they had, they had, there really were no, were there distributions under the plan? There were two of the admin creditors, the Chapter 11 admins, and then, it was probably because the lawyers got paid, I suppose, a confirmation. The lawyers got paid, right? I can remember a time when I wouldn't argue with that. Yeah, and again, from day one, if I may just address the merits, from day one, the question of whether or not the unsecured creditors received anything was very speculative, and that comes out of the mouth of the nuances. Let me, let me just propose something that may take into account, because I'm trying to put myself also in the position of the district judge. Semcrude came out after this decision in July of last year. I think Semcrude came out on August 27th or something like that. Yes, Your Honor. What if we were just to remand it back to Judge Robinson to consider, in light of Semcrude, take a re-look at it, without getting a whole lot into whether it's right or wrong, and also maybe there's, one of the things we've said in Semcrude is take a look at the less restrictive alternatives than just dismissing.  hey, let's just go for the merits. Your Honor, quite frankly, I'm happy to go for the merits any time. I mean, I have a three-day trial on this, and we believe that on the merits we are absolutely, you know, absolutely solid. With regard to a lesser-included remedy, that's part of the problem here, Your Honor, and I think you would, you know, That's if they, if there's something that relates to, in their favor, but to say to, you can't appeal, even if you claim that appeal is meritless, you can't appeal because we're just going to say it's equitable to remove. And I realize that at one point that was something that people did, but I still come back to the practical concern in this case. If your argument is as strong as you say on the merits, and it very well may be, why not just use that as a way to get out of Dodge? Well, Your Honor, if, again, we believe that the record before Judge Robinson was sufficient to show that equitable mootness would have been appropriate. If we have to go back, in all candor, Your Honor, I don't think Western jurisprudence is going to fail. Is there a way to uphold her ruling in the face of her own statements? I mean, that's, I've asked you this before, and you've said, oh no, there's slots in the record, but I really am curious, just as a matter of law, if a judge says there's not going to be a problem here, there's no great difficulty or inequity, how can that possibly meet the legal test? Which says, as you've just noted, at the second step in some crude, it's got to be chaotic, it's got to be a real big problem. If the judge says the preliminary, the foundation, doesn't exist, but I'm giving you the remedy. It almost seems, see if I can put it up, I'm going to dismiss out of equity because there is no inequity, and no making of sense. And that's my concern. Again, I think the record she had for her would stand. Again, I was came forward this morning not prepared to go into the merits of the case. Since the record would be before you. And we're not prepared to go into the merits of the case. Whatever you want to do, sign with me. Now, I take it, Mr. Appelsberg, you wouldn't have a problem with that, would you? That means you win. You'll hear from me. Obviously, I would be happy with whatever you have. Okay. Obviously, we would prefer Judge Robinson to be a little more robust in her findings as to why, there's a lot more to it than just vacating or discouraging attorneys. As the court is aware, under section 349 of the bankruptcy code, when you dismiss a case that has certain effects, and that's a matter of law that the trial court could... The court could deal with all of that, right? The question that's before us is very precise. It's whether they even get to stand up in front of her and make their arguments, right? What she does with the arguments, if and when they get to make them, is a completely separate thing. We're only asking whether they're entitled to stand up and make those arguments, right? Yes, Your Honor. Okay. And again, we would suggest that she did find there was equitable mootness, and we believe that's the correct result based upon the record. And it's just a matter of, we're going to go back and spend another year and a half litigating, spend tens of thousands of dollars on this for no benefit for the unsecured creditors of the case. Isn't that the pitch to properly make to an Article 3 court that's got jurisdiction, as opposed to saying, yeah, we know you said there's no inequity here, but as a matter of equitable discretion, even though you've got statutory and constitutional jurisdiction, don't exercise it? Well, the court did find, Your Honor, that there were, I think she applied the five-prong test from Continental. And she did find when she balanced all the prongs that there was a basis under the existing law of inquiry to dismiss an article of mootness grounds. Usually the one that people most focus on is substantial consummation. I mean, here it's, I don't understand. First sentence, the amended plan at bar has been substantially consummated. Then it goes on and says, however, there's been no distributions to unsecured creditors. Arguably the only aspects of plan implementation that require reversal are the limited number of distributions that have occurred. Therefore, the record does not indicate that reversing the amended plan would result in great difficulty or inequity. The first factor, therefore, weighs against dismissal. It's almost like she's saying it was substantially consummated but it really wasn't substantially consummated. Why don't you just give the district court a reading? It was holding by the trial court, by the district court. I acknowledge that and I'm not going to kid you. We do feel that the record that was before her would support the act of mootness. I'm prepared to give a laundry list of why it's substantially consummated. I'm prepared to give you a laundry list of what was in the record that would show that it would be a chaotic result. A lot of it is legal. In one sense, the facts are pretty much uncontested. It's a matter of what those facts would mean in the context of a dismissal. The motion was pledged as a motion to dismiss with an allonge of all sorts of... Hold on just a second. You say it's going to be chaotic. If we venture into the merits briefly Mr. Eccles-Burgess is saying, we're not asking for things to be in line. We're not saying you've got to give money back to Pennsylvania claimants. None of that sort of thing would have to happen. Is that true or is it not true? That is not true, Your Honor. If the case is dismissed, if this is pledged as a motion to dismiss and not some sort of a slapdash  that will confuse the issue, if it's simply a motion to dismiss, the answer is the case is dismissed or it's not dismissed. If the case is dismissed, then the legal applications of that are found in 11 U.S. Code section 349 which says what happens if the case is dismissed and quite frankly as Judge Shannon noted in his oral opinion, there's not a whole lot of case on that. We don't really know what happens. Mr. Eccles-Burgess had suggested that I had said to Judge Shannon that the plan remains in effect and that is in fact true. I say it could remain in effect. It's an opposition issue. If the case is dismissed and the plan is thrown to the side, then what's up? We have a confirmed case. This is not an unconfirmed case where you still have a debtor in possession and there's a structure there. So I think that is true, Mr. McLaughlin. How does that lead to catastrophe if the position you took in front of Judge Shannon is accurate, that it's dismissed but the effects of the plan linger that the song is over but the melody lingers on or whatever it is, then the Pennsylvania claimants keep their money? No, that's not my position. What I said was that because I don't know what's going to happen, my position would have to be as the advocate for the responsible officer that the plan was a confirmed plan until I find out from a competent judge. Otherwise, it's got to be it. If the plan is vitiated, then there's no responsible officer, there's no board of directors, there's no office of directors. There's a substantial consolidation provision in the plan that lumped the three debtors together. Is there a way for a court in addressing that problem to say without throwing the whole bathwater out and the baby with it to say we are going to do something less than vitiate the consequences of the plan even though we're dismissing the case? We're going to allow events which have taken place and things which have taken root some of them at least to remain and not disturb those legal relationships? Or does the dismissal itself by its very nature undermine all those relationships? I believe the best answer is that the dismissal by itself undermines the very structure of the case. Again, I don't know if there's any case law on this and that's why it would be fascinating because I'm sure we would be up before you several times in the subsequent years what it really meant. Again, if you convert a confirmed case there is some jurisprudence on that although for instance that may mean that you're converting in a state that doesn't have anything in it. So these are all sort of metaphysical questions and we used to love the U.S. Trustee's office and we didn't have to worry about the dollars and cents of it. It is of deep concern what happens. I would suggest that if the plan is, if the case is dismissed then the plan may be vitiated. It may not. Again, what I said accurately was that I would take the position on behalf of the responsible officer that the plan was a binding contract because that's what I understand a confirmed plan to be and that until we leave by competent authority we would continue to safeguard the books and records of the company and to do whatever we had to do. Although, an example, the responsible officer he's a point, he's created by, he's a creature in the plan, appointed by the plan subject to the approval of the plan funder because that's one of the things they negotiated for. If there is no plan, does he exist? He's not a creature that our general corporation is on. There are no bylaws, there's no election by the board of directors or the shareholders. What exactly is it? With all due respect, I don't know enough. It's something we would have to parse. It's actually fascinating. It is the grist for a dozen law review articles and probably a dozen appellate arguments, but I just don't know. The Pennsylvania judge or class action, let me focus on that for a minute because that seems to be an easy one for everybody to get their arms around. What was granted as part of the plan was a judgment allowing a proof of claim in the amount of $2.5 million. That judgment was done contemporaneously with the confirmation order by Judge Shannon. It's in the appendix but if you look at it it's not just a plain old judgment it is a judgment allowing a proof of claim. Now, if you dismiss a bankruptcy case are the allowance of claims what does that mean outside the world of bankruptcy? I'm not really sure. Does that mean that that judgment allowing a proof of claim can be domesticated in the middle district of Pennsylvania, where I believe this case is pending or can it be domesticated in the common police court in Dauphin County? I don't know. Again, it doesn't read exactly like a general district court judgment or an Article 3 judgment. What is not in the record but we did receive the responsible officer received communication from Mr. Driscoll, who is counsel for the Pennsylvania class. Apparently, the good offices of this court are mediators. They were able to reach a resolution with the insurance company backing up the claims. They have requested the insurance company have requested of the responsible officer a release that the state has no claims against the insurance company in the case itself. If there is no responsible officer, or if the responsible officer's authority is questionable, then they're not going to be able to get that release because it's not going to be a responsible officer to give it to them. That's going to clash back then. That all means if you lose on the merits of it, right? Certainly, if you lose on the merits, certainly that's what it means. So it doesn't mean that nothing happens if the equitable movements issue is overturned or does it? Does the litigation risk then kick in and create practical difficulties? For the Pennsylvania class? Right. Well, if the insurance company doesn't settle, and again, I was not part of the third circuit mediation, but I guess if they said no, we're not going to settle unless we get some sort of release from the SCH post-confirmation state, then I guess, yes, it would probably go back to wherever it is. Again, I haven't really been following the claim obviously before this court right now at some level. But that's going to adversely affect those claims. If those claimants have their rights under, they got rights under the plan. If there is no plan, then do they still have their judgment? Maybe, maybe not. If they don't, what rights do they have? Does that reinstate whatever? Probably they can go ahead and sue. But there's no plan if the dismissal is granted? Only then, right? If the dismissal is granted, query what happens to the plan. Does that negate the plan? Your Honor, I just don't know. Again, my comment before the trial court with Judge Shannon was based upon my The real effect of a confirmed bankruptcy plan is that that is a binding contract between the parties. And if in fact it is a contract that survives dismissal, then it could be enforced by ordinary contract remedies. Where it would be enforced, I'm not sure. The defenses that might be raised, for instance, we are receiving funding over an extended period of time. Again, installment payments. One's due hopefully soon. If the plan is initiated if the case is dismissed and the plan is initiated or if the case is dismissed, I do not know that our plan funders then are going to be in a position or willing to continue to make the payments that were negotiated for under the plan. If that's the case, then we have a choice of, I guess, filing a motion or a suit to compel compliance specific performance or whatever it would be. We would have no money. So basically the estate would then suffer and therefore the unsecured creditors would suffer if we were unable to collect that money. One of Judge Shannon's findings was that, and this is regarding the 9019, but effectively we didn't have a whole lot of bargaining power here. I gathered that. And as a result like any other as any other court analyzing a potential settlement, whether it's in bankruptcy or out, you have to look and determine whether or not it's a battle. If you had to fight the battle, is it a battle, you would have the logistics to win. I would suggest that we probably would not be able to take on a well-funded hedge fund. I'll give you one more minute. Okay. Your Honor, I understand the Court's position with regard to the equity witness. We do think that the record before Judge Robinson based on just the legal interpretation of the to uphold her finding of equitable mootness. To send this back, again, it will not be the end of the Western jurisprudence as we know it. However, it is going to be a long and tedious process. And quite frankly, as counsel said, they were never looking to upset the plaintiff. What they were really looking to do was to put LFCP and NCG, the plaintiff funder, in their place. This is a battle between these lawyers and NCG. The state is collateral damage. And yet we've been dragged now for almost four years through this muck and mire when it doesn't do anything for the creditors of our state. So I would ask the Court to consider that, whether or not we are a proper target of this, or whether or not we are really just a pawn between Mr. Ecclesburg and his co-counsel and LFCP slash NCG and the battles they are fighting over all these other non-bankruptcy-related battles in non-bankruptcy for all of the United States. Thank you very much. Thank you, Your Honor. Mr. Ecclesburg, what's your response? I take it you have a concern with sending this back? I thought that's what you wanted on the deal. No, not a concern. Absolutely not, Your Honor. Sending it back is really all that I could hope to achieve here given that the merits have never been decided. My concern is not really a concern, but really it's more in the nature of a suggestion to the Court. There are lots of ways that the Court can do this. I mean, in the past this Court has written extensively on equitable moodness and I think has been trying to instruct the District Courts what it is and what it isn't. And what happened here was effectively the District Court, rather than I believe, even though Sam Crude had not been decided, certainly Philadelphia newspapers had been decided, the message was clear, this is narrow, this is rare, and in fact I think what the District Court here did was effectively expand it into an area that was never designed to deal with. But basically what you're asking, the District Judge did not have Sam Crude in front of her. Take a look at Sam Crude and give another look. We would have no objections to that, Your Honor, I would just like to say I don't think there's anything more I could do. No, just two comments. One is just to be clear, we tried to have the Court look at the merits at the same time. I don't know if that came out in the brief. We filed a motion Well, I mean, the reason for equitable moodness is, I suppose maybe the merits could be an alternative voting, but the Court skewed that. Well, yes, although in Philadelphia newspapers what the Court was, the record that the Court got in Philadelphia newspapers was a decision on equitable moodness that went against the appellant, but also in the alternative, the District Court did in fact deal with the merits. And what this Court did was to say the way you handled the equitable moodness argument was wrong, but you were right on the merits. You can't do that here, obviously, because the merits weren't dealt with. It's important, I think, to tell the District Court, not just this District Court, because any time this Court writes on any bankruptcy issue it's providing instructions that go way beyond the litigation, that a post-confirmation proceeding alleging misconduct in the implementation of a plan is a uniquely inappropriate circumstance for equitable moodness to be applying. It just makes no sense. It's not about a challenge to the plan. It's about saying that the way that you have implemented the plan is somehow wrongful. And it's also important, Your Honor, what's at stake here in a good, you know, we made a good faith we made good faith allegations. When those allegations are made it's not just about the litigants. It's about the integrity of the process. And we we... I mean, you said it. What's before us is whether the decision on equitable moodness is on appeal. And a suggestion was that we ask the District Judge to take a look at Sam Crude and have a do-over. Thank you, Your Honor. I would ask, Counsel, if you would split the cost, just have a transcript of this whole argument. Well done. Appreciate having both of you here. Thank you, Your Honor. Thank you, Your Honor. This court's been adjourned until Wednesday, April 9th, 10 a.m. Tell me the word of the transcript. Sure. Counsel, this is a pretty important matter. Um, let's ask you not to... All right. Yes. Thank you, sir. Appreciate it. Yes. Okay. Oh. Oh.